IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INSIGHT EQUITY A.P. X, LP, d/b/a VISION-EASE LENS WORLDWIDE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 10-635-RGA |
| TRANSITIONS OPTICAL, INC., | ) ) | **REDACTED PUBLIC VERSION** |
| Defendant. | ) ) ) | |

**DEFENDANT TRANSITIONS OPTICAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE INADMISSIBLE SUMMARY JUDGMENT EVIDENCE PROFFERED BY PLAINTIFF INSIGHT EQUITY A.P. X, LP, D/B/A VISION-EASE LENS WORLDWIDE, INC.**

Of Counsel:

Jonathan M. Jacobson
jjacobson@wsgr.com
Chul Pak
cpak@wsgr.com
Jeffrey C. Bank
jbank@wsgr.com
Daniel P. Weick
dweick@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(212) 999-5800

Lisa A. Davis
ldavis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Chad M. Shandler (#3796)
shandler@rlf.com
Katharine C. Lester (#5629)
lester@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendant
Transitions Optical, Inc.*

Dated: October 24, 2014

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

INTRODUCTION & SUMMARY OF ARGUMENT................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.      THE FTC CONSENT ORDER MATERIALS ARE INADMISSIBLE AND
        MAY NOT BE RELIED ON BY VE TO OPPOSE SUMMARY JUDGMENT.............. 4

        A.      The Consent Order and All Related Materials are Inadmissible Under
                Clayton Act Section 5(a) ....................................................................... 5

        B.      The Federal Rules of Evidence Independently Bar Admission of the
                Consent Order Materials ........................................................................ 6

II.     THE HEPPER AND RESNIK DECLARATIONS SHOULD BE EXCLUDED
        ENTIRELY AS VIOLATING FEDERAL RULE OF CIVIL PROCEDURE
        56(C)(4)................................................................................................................... 8

III.    MANY STATEMENTS IN THE HEPPER AND RESNIK DECLARATIONS
        SHOULD ALSO BE EXCLUDED ON EVIDENTIARY GROUNDS ............................ 9

IV.     THE THIRD BASEMAN REPORT SHOULD BE EXCLUDED AS UNTIMELY ....... 14

V.      MR. BASEMAN'S REPORTS CANNOT SUBSTITUTE FOR COMPETENT
        EVIDENCE.............................................................................................................. 16

VI.     EVIDENCE OF ALLEGED PAST "RETALIATION" IS INADMISSIBLE ................. 16

VII.    VE'S INACCURATE SUMMARIES OF TOI'S CONTRACTS SHOULD BE
        EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 1006 .................................. 17

VIII.   ALL OF VE'S PROFFERED EVIDENCE CONCERNING FORECLOSURE
        FROM SALES TO OTHER LENS CASTERS IS INADMISSIBLE .............................. 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advo, Inc. v. Philadelphia Newspapers, Inc.*,
 51 F.3d 1191 (3d Cir. 1995) ............................................................................................16

*Apotex, Inc. v. Cephalon, Inc.*,
 C.A. No. 2:06-cv-2768,
 U.S. Dist. LEXIS 140096 (E.D. Pa. Oct. 1, 2014) ...........................................................12

*Argus Inc. v. Eastman Kodak Co.*,
 801 F.2d 38 (2d Cir. 1986) ..............................................................................................13

*Bank of China, New York Branch v. NBM LLC*,
 359 F.3d 171 (2d Cir. 2004) ............................................................................................11

*Becker v. ARCO Chem. Co.*,
 207 F.3d 176 (3d Cir. 2000) ............................................................................................17

*Blair v. Scott Specialty Gases*,
 283 F.3d 595 (3d Cir. 2002) ..............................................................................................9

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
 563 F. Supp. 2d 508 (D.N.J. 2008) ....................................................................................6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
 509 U.S. 209 (1993) .........................................................................................................16

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
 C.A. No. 09-290,
 2012 U.S. Dist. LEXIS 177647 (W.D. Pa. Dec. 15, 2012) .................................................8

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
 232 F.3d 200 (4th Cir. 2000) ...........................................................................................12

*Cinema Serv. Corp. v. Twentieth Century-Fox Film Corp.*,
 477 F. Supp. 174 (W.D. Pa. 1979) .....................................................................................4

*Clark v. Modern Grp. Ltd.*,
 9 F.3d 321 (3d Cir. 1993) ...................................................................................................1

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*,
 323 F.2d 412 (7th Cir. 1963) .............................................................................................5

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
 650 F. Supp. 2d 314 (S.D.N.Y. 2009) ..............................................................................12

*Dalweld Co. v. Westinghouse Elec. Corp.*,
 252 F. Supp. 939 (S.D.N.Y. 1966) .....................................................................................5

*Damon Corp. v. Geheb*,
   No. 80 C 1500,
   1982 U.S. Dist. LEXIS 16131 (N.D. Ill. Nov. 23, 1982)....................................................5

*Donlin v. Philips Lighting N. Am. Corp.*,
   581 F.3d 73 (3d Cir. 2009)...............................................................................................12

*Dow Chem. Canada Inc. v. HRD Corp.*,
   909 F. Supp. 2d 340 (D. Del. 2012), *aff'd*, --- F. App'x ----, 2014 WL
   5139234 (3d Cir. Oct. 14, 2014)......................................................................................15

*Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*,
   661 F.3d 959 (7th Cir. 2011) ...........................................................................................13

*Eichorn v. AT&T Corp.*,
   484 F.3d 644 (3d Cir. 2007)..............................................................................................17

*Hirst v. Inverness Hotel Corp.*,
   544 F.3d 221 (3d Cir. 2008)..............................................................................................11

*Hlinka v. Bethlehem Steel Corp.*,
   863 F.2d 279 (3d Cir. 1988)................................................................................................9

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
   289 F. Supp. 2d 493 (D. Del. 2003)..................................................................................14

*Howley v. Experian Info. Solutions, Inc.*,
   813 F. Supp. 2d 629 (D.N.J. 2011) ..................................................................................10

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   No. C-00-20905 RMW,
   2008 U.S. Dist. LEXIS 53220 (N.D. Cal. Jan. 9, 2008) ................................................5, 6

*In re Flat Glass Antitrust Litig.*,
   385 F.3d 350 (3d Cir. 2004)..............................................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................5

*In re Shopping Carts Antitrust Litig.*,
   M.D.L. No. 451-CLB, M-21-29,
   1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983)..................................................5

*In re Tenet Healthcare Corp. Sec. Litig.*,
   CV 02-8462-RSWL,
   2007 U.S. Dist. LEXIS 97821 (S.D. Cal. Dec. 4, 2007)....................................................8

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   Case No. 05CV633 JLS (CAB),
   2008 U.S. Dist. LEXIS 118344 (S.D. Cal. July 8, 2008) ..................................................6

*Jackson v. Louisville Ladder, Inc.*,
   No. 1:11-cv-1527, 2014 U.S. Dist. LEXIS 14298 (M.D. Pa. Feb. 5, 2014),
   *aff'd*, No. 14-1360, 2014 U.S. App. LEXIS 17766 (3d Cir. Sept. 16, 2014)......................8

*James River Ins. Co. v. Rapid Funding, LLC*,
    658 F.3d 1207 (10th Cir. 2011) ................................................................11

*Kunc v. ARA Servs., Inc.*,
    414 F. Supp. 809 (W.D. Okla. 1976) ........................................................5

*LifeWise Master Funding v. Telebank*,
    374 F.3d 917 (10th Cir. 2004) ................................................................12

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ........................................................8

*Minerva Marine, Inc. v. Spiliotes*,
    Civ. No. 02-2517 (WHW),
    2006 U.S. Dist. LEXIS 13922 (D.N.J. Mar. 13, 2006) ..............................12

*New Jersey Turnpike Auth. v. PPG Indus., Inc.*,
    16 F. Supp. 2d 460 (D.N.J. 1998) ............................................................6

*Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*,
    745 F.2d 248 (3d Cir. 1984) ..................................................................16

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
    998 F.2d 1224 (3d Cir. 1993), *aff'g in relevant part, rev'g in part on other*
    *grounds* No. 3:CV-86-0386, 1992 U.S. Dist. LEXIS 13054 (M.D. Pa. July
    31, 1992) ..................................................................................5, 17

*Philbin v. Trans Union Corp.*,
    101 F.3d 957 (3d Cir. 1996) ..................................................................9

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008) ..................................................................8

*Robocast, Inc. v. Apple Inc.*,
    C.A. No. 11-235-RGA,
    2014 U.S. Dist. LEXIS 10033 (D. Del. Jan. 28, 2014) ..............................15

*Ross v. Am. Red Cross*,
    Case No. 2:09-cv-00905-GLF-MRA, 2012 U.S. Dist. LEXIS 77475 (N.D.
    Ohio June 5, 2012), *aff'd*, 567 F. App'x 296 (6th Cir. 2014) ....................7

*Scott v. Calpin*,
    527 F. App'x 123 (3d Cir. 2013) ............................................................16

*SEC v. Infinity Grp. Co.*,
    212 F.3d 180 (3d Cir. 2000) ..................................................................11

*Smith v. City of Allentown*, 589 F.3d 684 (3d Cir. 2009) ............................................9

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, C.A.
    No. 04-1436-LPS, 2012 U.S. Dist. LEXIS 40103 (D. Del. Mar. 26, 2012),
    *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) ..............................................15

*Steelman v. Carper,*
    124 F. Supp. 2d 219 (D. Del. 2000) ............................................................9

*Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.,*
    63 F.3d 1267 (3d Cir. 1995) ..................................................................18

*U.S. Bank Nat'l Ass'n v. Gunn,*
    Civ. No. 11-1155-RGA,
    2014 U.S. Dist. LEXIS 27237 (D. Del. Mar. 4, 2014) ....................................8

*United States v. Associated Milk Producers, Inc.,*
    534 F.2d 113 (8th Cir. 1976) ..................................................................5

*United States v. Gibson,*
    636 F.2d 761 (D.C. Cir. 1980) ................................................................12

*United States v. Rea,*
    958 F.2d 1206 (2d Cir. 1992) ..................................................................12

*Washington v. Dep't of Transp.,*
    8 F.3d 296 (5th Cir. 1993) ....................................................................12

*White v. Walker,*
    950 F.2d 972 (5th Cir. 1991) ..................................................................12

*Y & Y Popcorn Supply Co. v. ABC Vending Corp.,*
    263 F. Supp. 709 (E.D. Pa. 1967) ............................................................5

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.,*
    395 F.3d 416 (7th Cir. 2005) ..................................................................13

## STATUTES

15 U.S.C. § 16 ......................................................................................1, 2, 5

15 U.S.C. § 45 ............................................................................................5

## RULES

Fed. R. Civ. P. 16 ..............................................................................1, 2, 15

Fed. R. Civ. P. 26 ......................................................................................14

Fed. R. Civ. P. 37 ..............................................................................1, 2, 15

Fed. R. Civ. P. 56 ................................................................................*passim*

Fed. R. Evid. 401 ......................................................................................1, 7

Fed. R. Evid. 402 ......................................................................................1, 7

Fed. R. Evid. 403 ................................................................................*passim*

Fed. R. Evid. 404 ............................................................................1, 2, 17

FED. R. EVID. 408 .................................................................................................. *passim*

FED. R. EVID. 602 .................................................................................................. *passim*

FED. R. EVID. 701 .................................................................................................. *passim*

FED. R. EVID. 703 ......................................................................................................1, 8

FED. R. EVID. 801 .........................................................................................................7

FED. R. EVID. 802 .................................................................................................. *passim*

FED. R. EVID. 803 ......................................................................................................7, 8

FED. R. EVID. 1006 ..............................................................................................1, 3, 17

## OTHER AUTHORITIES

Douglas H. Ginsburg & Joshua D. Wright, *Antitrust Settlements: The Culture of Consent, in* I WILLIAM E. KOVACIC: AN ANTITRUST TRIBUTE 177 (Nicolas Charbit, *et al.*, eds., 2012) ..............................................................................................7

*Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission,* 58 ANTITRUST L.J. 43 (1989) ..................................................................................6

Defendant Transitions Optical, Inc. ("TOI") respectfully moves this Court for an order excluding certain evidence proffered by Plaintiff Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide, Inc.'s ("VE") in support of its opposition to TOI's motion for summary judgment. This motion is made pursuant to Federal Rules of Civil Procedure 16(f), 37(c), and 56(c) as well as 15 U.S.C. § 16(a) and Federal Rules of Evidence 401, 402, 403, 404, 408, 602, 703, 802, and 1006.

## NATURE AND STAGE OF PROCEEDINGS

This is an antitrust case in which VE alleges that TOI violated federal and state antitrust and unfair competition laws by allowing a supply agreement for Transitions photochromic lenses to end in 2005 and offering various discount programs to TOI's direct and indirect customers to incentivize them to sell more Transitions lenses. *See* D.I. 63 at A-108-31. TOI has moved for summary judgment dismissing all of VE's claims. *See* D.I. 38. VE has opposed the motion, relying on various exhibits and declarations of F. Matthew Ralph, Douglas Hepper, Barry Resnik, and Kenneth Baseman. *See* D.I. 54, 55, 57-61, & 68-69.

## INTRODUCTION & SUMMARY OF ARGUMENT

To survive summary judgment, "[a] plaintiff . . . must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law." *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993). But in opposing TOI's motion for summary judgment, VE has relied extensively on exhibits and testimony that fail the most basic requirements for admissibility. Under Rule 56(c)(2), VE's inadmissible "evidence" should be disregarded in this Court's consideration of TOI's pending summary judgment motion.

1. VE places great weight on the consent order and related materials generated in connection with TOI's settlement with the Federal Trade Commission (FTC) in 2010 even

though the materials only represent allegations by agency staff and in no way represent findings of the agency (despite VE's incorrect characterizations).  Clayton Act Section 5(a), 15 U.S.C. § 16(a), and multiple rules of evidence render all those materials and references to them inadmissible.

2.  VE presents declarations from two of its employees, Douglas Hepper and Barry Resnik, as part of its opposition to summary judgment.  But those declarations do not comply with the personal knowledge requirement of Federal Rule of Civil Procedure 56(c)(4), meaning they are not proper evidence.  This defect justifies excluding them completely.  Furthermore, they are riddled with hearsay statements from either unidentified declarants or declarants whose availability for trial has not been established, and they present numerous lay opinions that lack the foundation required by Federal Rule of Evidence 701.

3.  VE also presents a declaration from its economist, Kenneth C. Baseman, M.A., providing further opinions on the case.  This declaration amounts to a third expert report served over 18 months after the close of expert discovery.  Its untimeliness justifies exclusion under Federal Rules of Civil Procedure 16(f) and 37(c).  Moreover, VE relies on Mr. Baseman's reports for factual propositions in violation of Federal Rules of Evidence 602 and 802, and its citations to the expert reports to establish facts (as opposed to interpreting them) should be rejected.

4.  VE relies heavily on assertions concerning 15-year old competitive situations between TOI and Corning Inc., Signet Armorlite, Hoya Lens of America, and Augen Opticos, as well as its characterization of settlements between TOI, Corning, and Signet in 1999 and 2002.  These incidents are inadmissible prior acts under Federal Rules of Evidence 404(b) and 403, and the settlements are clearly inadmissible under Federal Rule of Evidence 408.

2

5.   VE also presents purported summaries of multiple TOI agreements, but those summaries do not accurately reflect the evidence they purport to summarize.  They are thus not proper evidence under Federal Rule of Evidence 1006.

6.   To support its assertions about other lens casters' business relationships, VE cites 1) deposition testimony by Douglas Hepper about what another VE employee told him about other lens casters' statements, 2) deposition testimony by a VE employee purporting to convey other lens casters' statements, and 3) deposition testimony from corporate representatives of an entity that was not involved in negotiations with VE regarding what they heard from unnamed executives at a ███ entity that may have had such negotiations.  The first two categories of testimony are improper hearsay, and the third is both hearsay and lacking foundation in the witnesses' personal knowledge.  The cited testimony is thus inadmissible under Federal Rules of Evidence 602 and 802.

*****

Each of these categories of proffered evidence is inadmissible under elementary evidentiary principles, thus precluding their use to resist summary judgment.  The Court should therefore exclude them from the summary judgment record and decide TOI's motion for summary judgment without considering VE's improper exhibits and declarations.

## BACKGROUND

TOI filed for summary judgment relying on evidence whose admissibility is uncontested.  *See* D.I. 38, 39, 41, & 43.[1]  VE has opposed the motion, relying on multiple categories of inadmissible evidence.  *See* D.I. 57.  These include the FTC administrative complaint, consent

---

[1]   To date, the sole evidentiary objection raised by VE is to certain relevant market opinions from TOI's expert economist that are not at issue in TOI's motion for summary judgment.  *See* D.I. 40.

order, and analysis to aid public comment generated in connection with TOI's settlement with the FTC in 2010 as well as exhibits relying on those documents; declarations from VE employees Barry Resnik and Douglas Hepper that are not confined to their personal knowledge and contain multiple objectionable statements; an improper third expert report from VE's economist, Kenneth C. Baseman; evidence of prior acts by TOI respecting Corning/Signet, Augen, and Hoya; deposition testimony concerning other lens casters that cannot be presented in admissible form; and a set of charts presenting a biased summary of TOI's downstream contracts. *See* D.I. 54, 55, 58, & 59; D.I. 60 Exs. 3, 48-55, 164-66; D.I. 60 Ex. 172 at 40; D.I. 60 Ex. 173 at 140, 179-80, & 248-53; D.I. 61 at Exs. 1-2, 29, 43, 44, 45, 46, 47, 49, 50, 53, 56, 57, 58, & 59; D.I. 68 Ex. 144 at 237-38; D.I. 69 Ex. 176 at 152-56. TOI here moves to exclude that evidence from the summary judgment record.

## ARGUMENT

### I. THE FTC CONSENT ORDER MATERIALS ARE INADMISSIBLE AND MAY NOT BE RELIED ON BY VE TO OPPOSE SUMMARY JUDGMENT

VE relies extensively on the FTC consent order materials in its summary judgment opposition, declarations opposing summary judgment, and expert reports, incorrectly characterizing these materials as representing the agency's findings and conclusions (as opposed to mere allegations proposed by the agency's staff). *See* D.I. 57 at 17-18; D.I. 60 Exs. 164-66; D.I. 54 ¶ 32; D.I. 55 Ex. A ¶¶ 13, 15-16, 67, 132, 166, 182, 199, 206, 208, 211-17, 245-46, 266, 270, 280, 281, 283, 284, & 290-92; D.I. 55 Ex. B ¶¶ 35-36, 61, 66, 67, 69, 71-72, 76, 80, 103, 106, 107, 117, 122, 125, 127-28, & 138; D.I. 58 ¶¶ 4-15, 31, & 56-57. All such evidence should be disregarded under both the federal statute regulating admission of consent decrees in antitrust cases and the Federal Rules of Evidence. *See Cinema Serv. Corp. v. Twentieth Century-Fox Film Corp.*, 477 F. Supp. 174, 178 (W.D. Pa. 1979) ("It is well settled that a consent judgment in

a civil case, or any evidence thereof, is not admissible in a treble damage action. . . . Such evidence can have no real purpose except to prejudice the defendant before a jury.").

**A.     The Consent Order and All Related Materials are Inadmissible Under Clayton Act Section 5(a)**

Clayton Act § 5(a), 15 U.S.C. § 16(a), controls admission of evidence of consent decrees in antitrust cases.  A consent decree is only admissible in a follow-on action if 1) the proceeding was "under the antitrust laws" and 2) the consent decree was entered after testimony was taken. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1247 (3d Cir. 1993), *aff'g in relevant part, rev'g in part on other grounds* No. 3:CV-86-0386, 1992 U.S. Dist. LEXIS 13054, at *57 (M.D. Pa. July 31, 1992).   *Accord United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 116-17 n.3 (8th Cir. 1976); *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 323 F.2d 412, 414 (7th Cir. 1963); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Shopping Carts Antitrust Litig.*, M.D.L. No. 451-CLB, M-21-29, 1983 U.S. Dist. LEXIS 11555, at *20-*21 (S.D.N.Y. Nov. 18, 1983).   *See also Damon Corp. v. Geheb*, No. 80 C 1500, 1982 U.S. Dist. LEXIS 16131, at *3-*5 (N.D. Ill. Nov. 23, 1982) (striking allegations concerning FTC consent decree and complaint).

The FTC proceedings VE cites were under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and therefore were not "under the antitrust laws" for these purposes.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2008 U.S. Dist. LEXIS 53220, at *9-14 (N.D. Cal. Jan. 9, 2008); *Y & Y Popcorn Supply Co. v. ABC Vending Corp.*, 263 F. Supp. 709, 713 (E.D. Pa. 1967).  The consent order was also entered before any testimony was taken in any proceeding.  *See Kunc v. ARA Servs., Inc.*, 414 F. Supp. 809, 810-12 (W.D. Okla. 1976); *Dalweld Co. v. Westinghouse Elec. Corp.*, 252 F. Supp. 939, 942 (S.D.N.Y. 1966).  Both facts thus render the consent order documents inadmissible for trial and summary judgment.

Rigorously enforcing the statutory bar on admission of consent decrees in antitrust cases here is especially appropriate in light of the nature of the FTC's mission. "The FTC is a less dangerous forum than the federal courts for testing legal theories and considering their application in difficult cases since the FTC's sanctions are civil and prospective and its decisions cannot be used as prima facie evidence to support treble damages awards." *Hynix*, 2008 U.S. Dist. LEXIS 53220, at *13 (quoting *Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission*, 58 ANTITRUST L.J. 43, 62 (1989)). Because the FTC has authority to pursue newer theories of competitive harm and conduct that may not constitute a true antitrust violation, admitting settlements with the agency can serve no valid purpose in a follow-on private litigation and may in fact render it more difficult for the agency to efficiently resolve competition concerns it may have. The Court should thus disregard all references to the FTC consent decree to the extent VE seeks to use the settlement to bolster its case.

### B. The Federal Rules of Evidence Independently Bar Admission of the Consent Order Materials

The FTC settlement documents and all references to them are also inadmissible under multiple rules of evidence.

*Settlement Negotiations*: Rule 408 has routinely been invoked to exclude evidence of government consent decrees. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 535 (D.N.J. 2008); *Iorio v. Allianz Life Ins. Co. of N. Am.*, Case No. 05CV633 JLS (CAB), 2008 U.S. Dist. LEXIS 118344, at *12-14 (S.D. Cal. July 8, 2008); *New Jersey Turnpike Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 473 (D.N.J. 1998). All of the FTC documents pertain to the consent order, so they are all inadmissible as statements made in connection with a settlement. FED. R. EVID. 408.

6

**Irrelevant**: The FTC documents do not cite evidence or otherwise provide a basis for their assertions. The statements in them thus have no tendency to make any fact in issue more or less likely to be true. FED. R. EVID. 401. The documents are therefore irrelevant. FED. R. EVID. 402.

**Unduly Prejudicial**: Even if the FTC documents had some *de minimis* relevance, their prejudicial impact would far outweigh their probative value. FED. R. EVID. 403. *See also Ross v. Am. Red Cross*, Case No. 2:09-cv-00905-GLF-MRA, 2012 U.S. Dist. LEXIS 77475, at *9-*10 (N.D. Ohio June 5, 2012), *aff'd*, 567 F. App'x 296 (6th Cir. 2014). They cite no evidence and provide no foundation for their allegations. Notably, an FTC commissioner and D.C. Circuit judge have criticized the FTC's intervention in this case, making the documents' probative value even more tenuous. *See* Ex. A,[2] Douglas H. Ginsburg & Joshua D. Wright, *Antitrust Settlements: The Culture of Consent, in* I WILLIAM E. KOVACIC: AN ANTITRUST TRIBUTE 177, 185 (Nicolas Charbit, *et al.*, eds., 2012) (describing FTC's intervention as "Antitrust Misuse").

**Hearsay**: The FTC documents are clearly out of court statements by agency staff, and VE has offered them to prove the truth of its competitive effects allegations. FED. R. EVID. 801. They are thus inadmissible under Rule 802. Rule 803(8) does not allow for their admission, because they only detail allegations that the agency's staff believed it could make in good faith, not "factual findings from a legally authorized investigation[.]" FED. R. EVID. 803(8)(A)(iii). They never cite to evidence or otherwise suggest that the statements therein represent findings of fact. Moreover, because the documents merely articulate litigating positions, do not reflect findings made after a hearing before a neutral arbiter, and note throughout that TOI never agreed that the allegations are correct, the documents lack the requisite trustworthiness to be admitted.

---

[2]   Unless otherwise noted, exhibit references are to the Declaration of Daniel P. Weick submitted in support of this motion.

See FED. R. EVID.  803(8)(B).  *See also In re Tenet Healthcare Corp. Sec. Litig.*, CV 02-8462-RSWL (RZx), 2007 U.S. Dist. LEXIS 97821, at \*9 (S.D. Cal. Dec. 4, 2007).

*Not Admissible Through Mr. Baseman*: Rule 703 only allows inadmissible evidence underlying an expert's opinion to be admitted if the probative value of the evidence "substantially outweighs" its prejudicial impact. FED. R. EVID. 703. "[T]he Rule's balancing test clearly establishes a presumption against disclosure to the jury of otherwise inadmissible evidence."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247 n.14 (3d Cir. 2008); *Jackson v. Louisville Ladder, Inc.*, No. 1:11-cv-1527, 2014 U.S. Dist. LEXIS 14298, at \*15-18 (M.D. Pa. Feb. 5, 2014), *aff'd*, No. 14-1360, 2014 U.S. App. LEXIS 17766 (3d Cir. Sept. 16, 2014); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, C.A. No. 09-290, 2012 U.S. Dist. LEXIS 177647, at \*47-48 (W.D. Pa. Dec. 15, 2012).  *Accord Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) ("Rule 703 was never intended to allow oblique evasions of the hearsay rule.").  Since the FTC documents have no probative value (and thus no reasonable expert would rely on them), the prejudicial impact of allowing a finder of fact to consider unproven allegations by the agency's staff far outweighs any probative value the documents might have.  The Court should thus disregard Mr. Baseman's references to the FTC settlement and associated documents as well.

## II.   THE HEPPER AND RESNIK DECLARATIONS SHOULD BE EXCLUDED ENTIRELY AS VIOLATING FEDERAL RULE OF CIVIL PROCEDURE 56(C)(4)

"[T]here are strict rules governing the form of affidavits that may be considered in summary judgment proceedings." *U.S. Bank Nat'l Ass'n v. Gunn*, Civ. No. 11-1155-RGA, 2014 U.S. Dist. LEXIS 27237, at \*20 (D. Del. Mar. 4, 2014) (Andrews, J.).  Declarations used in summary judgment proceedings "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated." FED. R. CIV. P. 56(c)(4).  *See also Blair v. Scott Specialty Gases*, 283 F.3d 595,

608 (3d Cir. 2002); *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 282 (3d Cir. 1988).

The Hepper and Resnik declarations are categorically inadmissible because they are not

limited to facts within the personal knowledge of each declarant.  Rather, each declaration claims

to be based on a mix of personal knowledge, the declarant's "review of VE's business records,"

and the declarant's "discussions with VE's employees[.]"  *See* D.I. 58 & 59.  The declarations

are thus improper on their face.  *See Steelman v. Carper*, 124 F. Supp. 2d 219, 227 & n.25 (D.

Del. 2000) (disregarding as "irrelevant" declaration made "based on [the declarant's] 'personal

awareness' rather than upon personal knowledge.").

At a minimum, each statement that is not clearly noted as reflecting the declarant's

personal knowledge (as opposed to other sources) should be disregarded.  This includes

paragraphs 1-19 and 21-38 of Mr. Resnik's declaration and 1-4, 6-15, 16-20, and 27-59 of Mr.

Hepper's declaration.

III.   **MANY STATEMENTS IN THE HEPPER AND RESNIK DECLARATIONS SHOULD ALSO BE
       EXCLUDED ON EVIDENTIARY GROUNDS**

The Hepper and Resnik declarations contain multiple statements objectionable on

additional evidentiary grounds.

***Hearsay***:  Inadmissible hearsay may not be considered in summary judgment

proceedings.  *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).  Hearsay within a

declaration may only be considered if the hearsay declarant is capable of being produced at trial.

*See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996).  If the declaration does

not identify the hearsay declarant or the declarant was not identified on the hearsay proponent's

trial witness list, the hearsay may not be admitted.  *Id.*  The party relying on the hearsay must

affirmatively establish that the hearsay declarant will be available for trial.  *See Howley v. Experian Info. Solutions, Inc.*, 813 F. Supp. 2d 629, 611 (D.N.J. 2011).

　　Mr. Hepper's declaration is replete with inadmissible hearsay.  He attempts to testify about conversations between VE's counsel and the FTC (despite having previously testified under oath that VE had only discussed general industry background with the FTC), but he never identifies the VE attorneys who interacted with the FTC, nor the FTC official with whom they interacted. D.I. 58 ¶¶ 56-57. *See also* TOI S.J. Reply Br. at 3.  Mr. Hepper's descriptions of Des Taylor's statements are not admissible since VE has not shown Mr. Taylor would appear at trial to give them. D.I. 58 ¶ 7.  His statements about information obtained from VE's salespeople are inadmissible because the salespeople are not identified. *Id.* ¶ 10.  He does not identify the lens-caster declarants who expressed enthusiasm for LifeRx or the basis for their beliefs, nor does he identify the ▮▮▮▮ declarant he references. *Id.* ¶ 12.  He offers statements regarding the preferences of other lens casters and downstream customers without identifying the declarants who gave him that information. *Id.* ¶ 17.  He does not identify the VE managers who made the statements he relays about TOI, the TOI employee who allegedly "advised" him to drop SunSensors, or the Insight Equity partners who allegedly said Mr. Elias was "harassing" them about TOI acquiring LifeRx. *Id.* ¶¶ 20, 22, & 27.[3]  There is no evidence in the record that the LensCrafters declarant mentioned by Mr. Hepper will be available at trial. *Id.* ¶ 31.  The same is true of Michael Ness, whom Mr. Hepper purports to quote. *Id.* ¶ 38.

　　Mr. Resnik's declaration likewise contains multiple inadmissible hearsay statements.  His characterization of consumer studies is inadmissible as the studies are not identified, so the

---

[3]　Notably, VE successfully resisted discovery of Insight Equity partners by representing to the MDL Court (through both arguments of counsel and a sworn declaration from Mr. Hepper) that they had no information relevant to the case. *See* 1:14-mc-00189-RGA, D.I. 245 at 14-15, D.I. 246 ¶¶ 2-4, & D.I. 275 at 4.  Its reliance on hearsay testimony about Insight Equity is thus especially improper.

hearsay cannot be entered in admissible form.  D.I. 59 ¶ 8.  His description of what is "generally thought" to comprise the retail channel is also inadmissible since he does not identify who the statement refers to.  *Id.* ¶ 17.  His assertions about the habits, thoughts, and preferences of other lens casters and downstream customers should be excluded since he does not identify who communicated this information to him.  *Id.* ¶¶ 21-25, & 30.  His characterization of TOI's motives is based on double hearsay (since his employee communicated the alleged statements to him), and his characterization of TOI's downstream contracts is likewise hearsay without any apparent admissible basis. *Id.* ¶¶ 32-34.

Notably, none of the hearsay declarants were identified on VE's witness list.  *See* Ex. B. Because all of the out of court statements are facially offered by Messrs. Resnik and Hepper to prove the truth of their various assertions and bolster their testimony, and because there is no evidence in the record that VE will actually be able to present the statements in admissible form, all of the identified statements should be disregarded as inadmissible hearsay.

***Unfounded Lay Opinions***: While lay witnesses may offer certain opinions, those opinions must be 1) "rationally based on the witness's perception," 2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and 3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702[.]"  FED. R. EVID. 701.  Lay opinion testimony must therefore be grounded in facts within the witness's personal knowledge, and "a party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702."  *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225-28 (3d Cir. 2008); *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 198 (3d Cir. 2000).  *See also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213-16 (10th Cir. 2011); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004).  Speculation by a lay witness

about what they or others "would have done" without clear factual grounding is unreliable and unhelpful, and therefore inadmissible. *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 82 (3d Cir. 2009); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993); *Apotex, Inc. v. Cephalon, Inc.*, C.A. No. 2:06-cv-2768, U.S. Dist. LEXIS 140096, at *6-14 (E.D. Pa. Oct. 1, 2014). *Accord United States v. Gibson*, 636 F.2d 761, 764 (D.C. Cir. 1980) (Ginsburg, J.) ("[W]e know of no case holding that a trial judge must permit a lay witness to use one set of observations as the foundation for an opinion about what he might have seen under different circumstances.").

While courts have allowed experienced business executives more leeway in opining on business valuation and lost profits, those opinions have always been limited to opinions rooted in the witnesses' "personal knowledge of their respective businesses *and* of the factors on which they relied to estimate lost profits" or "straightforward, common sense calculations." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004) (emphasis in original). If "a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701[.]" *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 321 n.4 (S.D.N.Y. 2009) (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). Additionally, whatever the witness's background, "a lay witness may not answer hypothetical questions." *Minerva Marine, Inc. v. Spiliotes*, Civ. No. 02-2517 (WHW), 2006 U.S. Dist. LEXIS 13922, at *22 (D.N.J. Mar. 13, 2006). *See also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000); *White v. Walker*, 950 F.2d 972, 979 (5th Cir. 1991).

The most egregiously inadmissible lay opinions that VE offers are Mr. Hepper's musings on what VE might have done if it was not going to face a competitive response from TOI when it

launched LifeRx.  D.I. 58 ¶¶ 33 & 52-53.  His opinion on VE's hypothetical 40-store test is raw speculation: it assumes VE would have faced no competitive response whatsoever from TOI, and simply observes that there have been other market tests for other products without offering details or reasons to believe the claimed other tests would be analogous to his proposed test.  *Id.* ¶ 33.

Mr. Hepper likewise offers nothing but speculation in support of his view that delamination would have been solved by this test: he admits that the 40-store test itself is a "hypothetical" assumption, he assumes that the initial dispensing (not the full everyday use) would have occurred in the summer, he identifies no factual predicate for his assertion that enough delaminations would occur to flag the issue, and he provides no factual basis for the assumption that LensCrafters would have allowed VE to go back to the drawing board to correct a severe product defect rather than moving on to other opportunities.  *Id.* ¶ 52.  And he completely fails to address any of the factual evidence showing that a July-January run (covering primarily autumn months) would not have resulted in substantial delamination reports and that VE would not have been able to identify and resolve the delamination problem in the hypothesized time period.  *See* D.I. 38 at 20-21.

In short, Mr. Hepper's "hypothetical model" (D.I. 58 ¶ 53) is based on nothing but his conjecture.  It is therefore not proper lay opinion testimony.  *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (Easterbrook, J.) ("Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert.").  *See also Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 965 (7th Cir. 2011) (opinion "supported by nothing but [the witness's] *ipse dixit* . . . was properly excluded."); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986).

The Hepper and Resnik declarations also contain other inadmissible opinions. Mr. Hepper offers opinions on other lens casters' businesses, TOI's profitability, and TOI's motives that do not appear to have any plausible link to his personal knowledge, let alone any potential to be helpful to a trier of fact. D.I. 58 ¶¶ 12, 15, 17, 24, 27, 31, & 55-57. Similarly, Mr. Resnik is plainly unqualified to opine on the economic issue of whether photochromic lenses have "close substitutes in the market." D.I 59 ¶ 8. His opinions on TOI's profits, negotiating practices, and motives as well as other lens casters' experiences also lack any foundation since he is not employed by TOI or other lens casters. *Id.* ¶¶ 23-24, 32-34, & 37. Likewise, his opinions about TOI's discounting practices and their justifications are not grounded in his experience, but in speculation. *Id.* ¶¶ 33-37. VE should not be permitted to oppose summary judgment with baseless and unhelpful lay opinion testimony, so the identified statements from the Resnik and Hepper declarations should also be excluded under Rule 701.

*****

Given that the Hepper and Resnik declarations are so heavily reliant on improper statements, they should be disregarded in their entirety. At a minimum, the identified paragraphs should be ruled inadmissible for the reasons detailed above.

## IV.   THE THIRD BASEMAN REPORT SHOULD BE EXCLUDED AS UNTIMELY

Federal Rule of Civil Procedure 26(a) requires an expert report to provide "a *complete* statement of *all* opinions the witness will express and *the basis and reasons for them*[.]" FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added). *Accord Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp. 2d 493, 500 (D. Del. 2003) ("[T]he testimony of expert witnesses is limited to the information contained in their expert reports."). Mr. Baseman had the opportunity to articulate his opinions and their bases in two expert reports. *See* D.I. 55 Exs. A & B. He also

14

had the opportunity to explain himself further at his deposition on February 6, 2013. *See* D.I. 48 Ex. 6. Expert discovery closed on February 15, 2013. *See* D.I. 37 Ex. A at 2.

Rather than defend Mr. Baseman's opinions (and the merits of its case) by reference to his proper reports, VE proffers yet another report from Mr. Baseman well after the close of expert discovery. *See* D.I. 54. The report contains new defenses of his tax theory and damages model that are insufficient for the reasons described in TOI's reply brief in support of its *Daubert* motion, and are also untimely. It also addresses issues that never arose in Mr. Baseman's reports, such as his hypothesis that TOI's prices would be increased to offset its discounts, his speculation that VE would have engaged in toll manufacturing for other lens casters, and multiple other issues not addressed in his properly served reports. *See, e.g., id.* ¶¶ 11, 39, & 44.

The proper approach under Federal Rule of Civil Procedure 16(f) is to exclude the improper report from evidence. *See Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 343 (D. Del. 2012) (Andrews, J.) (excluding new expert declaration submitted in opposition to summary judgment after expert discovery deadline "as an improper and prejudicial attempt to circumvent the expert discovery schedule established by this Court."), *aff'd*, --- F. App'x ----, 2014 WL 5139234 (3d Cir. Oct. 14, 2014). *See also* FED. R. CIV. P. 37(b)(2)(A)(ii) (sanction of "prohibiting the disobedient party . . . from introducing designated matters in evidence") (incorporated by reference in FED. R. CIV. P. 16(f)(1)(C)). Exclusion of the late report is also appropriate under Rule 37(c): the relative prejudice to TOI is substantial since it did not have the opportunity to examine Mr. Baseman on the late-disclosed report, and taking the time now to reopen expert discovery at this late date for a supplemental deposition of Mr. Baseman and further rebuttal would inflict unjustified costs on TOI. *See Robocast, Inc. v. Apple Inc.*, Civil Action No. 11-235-RGA, 2014 U.S. Dist. LEXIS 10033, at *4 (D. Del. Jan. 28, 2014) (Andrews,

J.) (affirming exclusion of "supplemental" expert report under Rule 37(c)); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, C.A. No. 04-1436-LPS, 2012 U.S. Dist. LEXIS 40103, at *21-26 (D. Del. Mar. 26, 2012) (finding cost of reopening expert discovery justified exclusion of untimely supplemental expert report), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013). Mr. Baseman's untimely supplemental report should therefore be excluded.

## V.   MR. BASEMAN'S REPORTS CANNOT SUBSTITUTE FOR COMPETENT EVIDENCE

VE relies heavily on Mr. Baseman's three reports for factual propositions in lieu of competent evidence, especially for VE's incorrect assertion that TOI withheld private label products from the market. *See, e.g.*, D.I. 57 at 4 n.9, 8 n.37, 18 n.112, & 26 n.140. This is improper. "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). *See also Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1198-99 (3d Cir. 1995) (rejecting use of expert report in place of evidence at summary judgment stage); *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 262 (3d Cir. 1984) (same); *Scott v. Calpin*, 527 F. App'x 123, 126-27 (3d Cir. 2013) (same). The Baseman reports should be disregarded to the extent VE uses them to support its factual assertions rather than citing to competent evidence, for the factual statements in the report are hearsay and are not within Mr. Baseman's personal knowledge, meaning they are not admissible evidence for summary judgment purposes. *See* FED. R. CIV. P. 56(c)(4); FED. R. EVID. 602; FED. R. EVID. 802.

## VI.   EVIDENCE OF ALLEGED PAST "RETALIATION" IS INADMISSIBLE

VE makes claims of "retaliation" (i.e., competitive responses) by TOI against Corning/Signet, Augen, and Hoya for providing non-TOI photochromic lens products between 1998 and 2002. *See* D.I. 57 at 6-8. *See also* D.I. 55 Ex. A ¶¶ 203-07; D.I. 55 Ex. B ¶¶ 71-72; D.I. 58 ¶¶ 16, 22, & 35; D.I. 59 ¶¶ 25-26 & 32; D.I. 60 Exs. 48-55; D.I. 61 at Exs. 29, 43, 44, 45,

46, 47, 49, 50, 53, 56, 57, 58, & 59. These assertions and exhibits are inadmissible under Rule 404(b), for they are years removed from anything relevant to VE's claims and are offered purely in an attempt to show that TOI's alleged termination of VE was consistent with past acts. *See Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191-92 (3d Cir. 2000). Such character evidence is also not probative of any issue in this case, for VE has not alleged injury from either the Corning/Signet or Hoya situations and they are otherwise irrelevant to VE's case, so it should be excluded under Rule 403. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 377-78 (3d Cir. 2004) (affirming exclusion of allegedly similar acts under Rule 403).

At a minimum, the lawsuits and settlements involving Corning and Signet are inadmissible under Rules 408 and 403. *See Petruzzi's*, 998 F.2d at 1247 (affirming exclusion of prior private antitrust cases that ended in settlements under Rules 408 and 403) & 1992 U.S. Dist. LEXIS 13054, at *59-62 (district court reasoning approved by Third Circuit). For this further reason, the Corning/Signet exhibits and statements should be excluded. *See* D.I. 57 at 6-7; D.I. 60 Exs. 48-52; D.I. 61 Exs. 29, 43, 44, 45, 46, 47, 49, 50, & 53.

## VII.   VE's Inaccurate Summaries of TOI's Contracts Should Be Excluded Under Federal Rule of Evidence 1006

A summary created under Rule 1006 cannot be used to put a party's spin on voluminous evidence. *See Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). VE's characterizations of the contracts it attacks in Exhibits 1-3 of its opposition as "exclusive" or "preferred" represents VE's assertions, not a neutral summary (e.g., a quotation of common terms). *See* D.I. 60 Ex. 3; D.I. 61 Exs. 1-2. The exhibits even incorrectly deem LensCrafters, Wal-Mart, and Empire Vision "exclusive" even though there is no evidence any of those accounts were exclusive, and Empire Vision affirmatively *rejected* exclusivity. *See* TOI S.J. Reply Br. at 8-9. VE's biased and inaccurate summaries should thus be excluded.

17

## VIII. ALL OF VE's PROFFERED EVIDENCE CONCERNING FORECLOSURE FROM SALES TO OTHER LENS CASTERS IS INADMISSIBLE

VE attempts to claim lens-caster foreclosure, but the only evidence it proffers is inadmissible. *See* D.I. 27-28. Mr. Hepper's testimony concerning lens-caster interest in LifeRx is double hearsay, being based on statements from VE employee Timothy Mannchen to Mr. Hepper about what lens casters allegedly communicated to Mr. Mannchen. *See* D.I. 60 Ex. 172 at 40:5-18. Mr. Mannchen's testimony concerning lens-caster interest in LifeRx is hearsay as his only evidence is the lens casters' out-of-court statements. *See* D.I. 60 Ex. 173 at 140:2-19, 179:2-80:25, & 248:8-53:20. Since no evidence in the record suggests that the hearsay declarants will be available to testify, these deposition excerpts should be disregarded. *See* FED. R. EVID. 802. *See also Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1274-75 (3d Cir. 1995) (hearsay statements regarding conversations with customers not admissible to prove fact of lost sales).

The ████████ testimony VE cites is likewise inadmissible as lacking foundation under Rule 602 and as hearsay. The deponents were testifying as corporate representatives of ████ ███████████████████████████████████████████████████████████. *See* Ex. 144 at 1; D.I. 69 Ex. 176 at 1. ████ was the entity that would have conducted any negotiations with VE. *See* D.I. 69 Ex. 176 at 153:9-154:14 & 156:8-157:22. Because the entity for which the corporate representatives were testifying would not have had personal knowledge of any negotiations with VE, and neither witness individually had such knowledge or identified the ████████ employees whose statements they were repeating, any testimony adduced from them on why ████ did not pursue VE's LifeRx product is without foundation and inadmissible hearsay.

18

## CONCLUSION

Each category of evidence identified herein should be disregarded in deciding TOI's summary judgment motion.

Jonathan M. Jacobson
jjacobson@wsgr.com
Chul Pak
cpak@wsgr.com
Jeffrey C. Bank
jbank@wsgr.com
Daniel P. Weick
dweick@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(212) 999-5800

Lisa A. Davis
ldavis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300


Dated: October 24, 2014

*/s/ Chad M. Shandler*
Chad M. Shandler (#3796)
shandler@rlf.com
Katharine C. Lester (#5629)
lester@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendant*
*Transitions Optical, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014, the foregoing document was caused to be filed with the Clerk of Court via CM/ECF which will send notification of such filing to counsel of record and I further certify that I served the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Robert W. Mallard (#4279)
Alessandra Glorioso (#5757)
DORSEY & WHITNEY (DELAWARE) LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
(302) 425-7171
Mallard.robert@dorsey.com
Glorioso.alessandra@dorsey.com

**VIA ELECTRONIC MAIL**
Michael A. Lindsay
George G. Eck
F. Matthew Ralph
Andrew Brantingham
Alex Iliff
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
Lindsay.michael@dorsey.com
Eck.george@dorsey.com
Ralph.matthew@dorsey.com
Brantingham.andrew@dorsey.com
Iliff.alex@dorsey.com

*/s/ Katharine C. Lester*
Katharine C. Lester (#5629)

20